UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DANNY R. RICHARDS,

        Plaintiff,

  v.                                CAUSE NO. 3:20-CV-952-DRL

D. THEWS *et al.*,

        Defendants.

OPINION AND ORDER

Danny R. Richards, a prisoner without a lawyer, is proceeding on three claims. ECF 65. First, he is proceeding "against Dr. Nancy Marthakis, Nurse Practitioner D. Thews, and Nurse [Sherri Fritter] in their personal capacities for monetary damages for failing to provide adequate medical care for his pain and digestive issues from January 2020 to the present in violation of the Eighth Amendment[.]" *Id.* at 5. Second, he is proceeding "against Warden Ron Neal in his official capacity to obtain permanent injunctive relief related to his need for constitutionally adequate medical care to address his pain and digestive issues[.]" *Id.* Third, he is proceeding "against Wexford of Indiana, LLC, for maintaining a policy of discouraging medical providers from providing effective pain medication for inmates' chronic pain, and instead encouraging providers to simply refer inmates to the commissary to purchase over-the-counter medications[.]" *Id.*

Dr. Marthakis, Nurse Thews, Nurse Fritter, and Wexford (the "Medical Defendants") filed a joint motion for summary judgment. ECF 111. Warden Neal filed a

motion to join the Medical Defendants' summary judgment motion, and Mr. Richards filed a response in opposition. ECF 114, ECF 117. The court granted Warden Neal's motion for joinder, concluding Mr. Richards' claim against Warden Neal would necessarily fail if he did not establish a substantive Eighth Amendment claim against the Medical Defendants. ECF 119. Mr. Richards then filed a response to the summary judgment motion, and the Medical Defendants filed a reply. ECF 120, 123. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). When the defendants have provided some level of care for a prisoner's medical condition, to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Mr. Richards is proceeding on Eighth Amendment claims against five defendants. Each defendant will be addressed in turn.

A.     *Dr. Marthakis*

Mr. Richards is proceeding against Dr. Marthakis "for failing to provide adequate medical care for his pain and digestive issues from January 2020 to the present[.]" ECF 65 at 5. Specifically, Mr. Richards testified at his deposition he is suing Dr. Marthakis because she took him off effective medications such as Loperamide, put him on ineffective medications such as fiber tablets and a probiotic, and refused to address his chronic pain related to his bowel issues. ECF 112-4 at 4-5.

The parties provide evidence showing the following. Mr. Richards was transferred to Indiana State Prison (ISP) on January 15, 2020. ECF 112-5 at 48. Before his transfer to ISP, Mr. Richards had a medical history positive for diabetes, hyperlipidemia, hypertension, recurrent bowel issues, and gastroesophageal reflux disease (GERD). ECF 112-2 at 2. At the time of his transfer, he had active prescriptions for Atorvastatin, enema, Glimepiride, Lisinopril, Loperamide, Metformin, Nifedipine, Pepcid, vitamin B12, zinc oxide topical ointment, Xopenex inhaler, and Cymbalta. ECF 112-5 at 49.

Dr. Marthakis first saw Mr. Richards on March 3, 2020, regarding an issue with his pain medication. ECF 112-2 at 2; ECF 120 at 10. Mr. Richards wanted to be placed on Keppra for neuropathic pain because Cymbalta had been ineffective at treating his complaints. *Id.* Dr. Marthakis discontinued Mr. Richards' order for Cymbalta and ordered he receive Depakote for pain management. ECF 112-2 at 2; ECF 120 at 10-11. Mr. Richards had previously taken Depakote and had found it to be ineffective. ECF 120 at 10-11.

On May 8, 2020, Dr. Marthakis saw Mr. Richards for a chronic care visit regarding his chronic pain concerns. ECF 112-2 at 2; ECF 120 at 13. Dr. Marthakis continued a number of Mr. Richards' medications and ordered he receive chewable tablets to be used up to two times per day when he had symptoms of heartburn. ECF 112-2 at 2. Dr. Marthakis concluded that, because Mr. Richards did not have any indication of a significant upper GI abnormality such as Barrett's esophagus or gastroesophageal cancer,[1] chewable tablets would be a safer alternative to treat his mild GERD than ongoing H2 blockers or proton pump inhibitors, which came with numerous side effects. *Id.*

On July 22, 2020, Dr. Marthakis entered an update into Mr. Richards' medical file. ECF 112-2 at 3. Dr. Marthakis was made aware that Mr. Richards had reported in a prior nursing visit that she had instructed him to stop taking Depakote, and she made a note in Mr. Richards' file that she had not instructed him to stop taking Depakote. *Id.* Dr. Marthakis ordered Mr. Richards to be scheduled for another visit to discuss pain management for his right shoulder. *Id.*

On August 21, 2020, Dr. Marthakis saw Mr. Richards to discuss his bowel issues and request for extra toilet paper. *Id.*; ECF 120 at 20-21. Dr. Marthakis noted Mr. Richards' history of extensive surgical operations and that he was experiencing frequent stooling. *Id.* Dr. Marthakis continued the order for Mr. Richards to receive extra toilet paper,

---

[1] Mr. Richards argues Dr. Marthakis could not have reasonably concluded he did not have a significant upper GI abnormality because she never sent him to see a specialist or have an endoscopy. ECF 120 at 15. However, Dr. Marthakis could have reasonably concluded Mr. Richards had no "indication" of a significant upper GI abnormality based on her evaluation of his condition and symptoms.

5

reduced his dosage of Metformin, and discontinued his orders for Loperamide and an enema due to his report of frequent loose stool, which indicated the medications were not effective in treating his condition. *Id.*[2]

On September 23, 2020, Dr. Marthakis saw Mr. Richards regarding his bowel issues. ECF 112-2 at 3. Mr. Richards reported frequent stooling and requested that Dr. Marthakis reinstitute the discontinued order for Loperamide. *Id.* Dr. Marthakis noted the Loperamide had been discontinued based on Mr. Richard's report he continued to experience frequent loose stooling while on the medication. *Id.* Dr. Marthakis also noted a urinalysis taken that day showed very concentrated urine and that Mr. Richards needed to increase his fluid intake. *Id.* at 3-4. They discussed healthy bowel habits and the importance of daily exercise, drinking fluids, and eating foods that are easier to digest. *Id.* at 4. Dr. Marthakis ordered an 1800 calorie diet, a fiber tablet, twice-per-day Pepto Bismol, and discussed starting Mr. Richards on a probiotic for good bowel health. *Id.* Dr. Marthakis determined to try these alternative treatment options before restarting Mr. Richards on Loperamide because Loperamide had been ineffective at controlling his frequent loose stooling and is a medication that is often abused. *Id.*

On November 17, 2020, Dr. Marthakis saw Mr. Richards for a chronic care visit and discussed his bowel issues, in which he again reported frequent loose stooling. *Id.* Dr. Marthakis noted Mr. Richards had just begun taking a probiotic, increased his dosage

---

[2] Mr. Richards argues he never reported to Dr. Marthakis that Loperamide was ineffective at treating his conditions. ECF 120 at 21. However, Mr. Richards does not dispute he reported to Dr. Marthakis that he continued to experience frequent loose stooling while taking Loperamide.

of Pepto Bismol and fiber tablets, and ordered a number of labs. *Id.* Over the next several months, Mr. Richards stopped attending his chronic care visits. *Id.*; ECF 120 at 27-28. Mr. Richards has not seen or spoken with Dr. Marthakis since his November 17, 2020 chronic care visit. ECF 120 at 27.

Dr. Marthakis argues she was not deliberately indifferent to Mr. Richards' digestive issues or chronic pain because she regularly evaluated him and prescribed him treatment that was tailored to his complaints. ECF 112 at 18-20. Mr. Richards responds that Dr. Marthakis was deliberately indifferent because she knew the treatment plans she provided for his digestive issues and chronic pain were ineffective and she continued following the plans to cut costs, not as an exercise of her professional judgment. ECF 120 at 22-23.

Here, it is undisputed Dr. Marthakis regularly evaluated Mr. Richards and provided some level of care for his digestive issues and chronic pain. Thus, in order to survive summary judgment, Mr. Richards must provide evidence the treatment provided by Dr. Marthakis was "so plainly inappropriate as to permit the inference that [she] intentionally or recklessly disregarded his needs." *See Hayes*, 546 F.3d at 524.

Based on the record before the court, there is no evidence by which a reasonable jury could conclude the treatment Dr. Marthakis provided Mr. Richards for his digestive issues and chronic pain was "plainly inappropriate." Regarding Mr. Richard's digestive issues, it is undisputed Dr. Marthakis discontinued Mr. Richards' order for Loperamide and pursued an alternative treatment plan consisting of Pepto Bismol, fiber tablets, a probiotic, and instructing Mr. Richards on healthy bowel habits. Dr. Marthakis attests she

determined to discontinue Mr. Richards' Loperamide prescription after he reported he continued to experience frequent loose stooling while taking the medication. Because Mr. Richards does not dispute he continued to experience frequent loose stooling while taking Loperamide, no reasonable jury could conclude it was plainly inappropriate for Dr. Marthakis to discontinue the Loperamide and try an alternative treatment plan. Moreover, Mr. Richards provides no evidence the alternative treatment plan ordered by Dr. Marthakis was plainly inappropriate.

Mr. Richards argues fiber and probiotic tablets are not meant to thicken stools and Pepto Bismol is not meant to treat diarrhea, but he provides no evidence in support of these assertions. ECF 120 at 22. Mr. Richards also argues Dr. Marthakis' treatment plan did nothing but make his condition worse, but he does not provide any details explaining how his condition worsened. *Id.* Lastly, Mr. Richards argues Dr. Marthakis should have kept him on Loperamide, referred him for an endoscopy, and referred him to see a specialist, but this amounts to a demand for specific care. *Id.* at 15, 41-42. Mr. Richards' disagreement with Dr. Marthakis regarding the appropriate treatment does not amount to an Eighth Amendment violation. *See Ciarpaglini*, 352 F.3d at 331.

Regarding Mr. Richards' chronic pain, it is undisputed Dr. Marthakis prescribed him Depakote after he complained that Cymbalta had been ineffective at treating his neuropathic pain. ECF 112-2 at 2; ECF 120 at 10. Dr. Marthakis attests that "Depakote is primarily a medication used for treating seizure disorders but is approved for off-label use to treat patients with chronic pain." ECF 112-2 at 2. Mr. Richards responds that Depakote is not prescribed for chronic pain. ECF 120 at 11-12, 30. He provides a medical

8

document providing information about Depakote, and argues this document does not state Depakote has been approved to treat chronic pain. ECF 120 at 11-12; ECF 120-1 at 85-86. However, studies have found anti-seizure medications like Depakote can be effective at treating neuropathic pain. *See Anti-seizure medications: Relief from nerve pain*, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/in-depth/pain-medications/art-20045004 (last visited May 30, 2022). Thus, there is no evidence by which a reasonable jury could conclude it was plainly inappropriate for Dr. Marthakis to prescribe Mr. Richards Depakote to treat his neuropathic pain.

Because Dr. Marthakis has provided evidence she provided treatment for Mr. Richards' digestive issues and chronic pain that was based on her professional judgment, and Mr. Richards provides no evidence the treatment provided by Dr. Marthakis was plainly inappropriate, no reasonable jury could conclude Dr. Marthakis was deliberately indifferent to Mr. Richards' medical needs. Summary judgment is warranted in favor of Dr. Marthakis.

B. *Nurse Thews*

Mr. Richards is proceeding against Nurse Thews "for failing to provide adequate medical care for his pain and digestive issues from January 2020 to the present[.]" ECF 65 at 5. Specifically, Mr. Richards testified at his deposition that he is suing Nurse Thews because she would only give him Tums for his GERD and would not give him effective medications like Pepcid or Prilosec. ECF 112-4 at 5.

The parties provide evidence showing the following. On February 10, 2020, Nurse Thews first saw Mr. Richards for a chronic care visit. ECF 112-3 at 2. They discussed Mr.

9

Richards' chronic care conditions, which included high cholesterol, high blood pressure, and diabetes. *Id.*

On March 26, 2020, Nurse Thews saw Mr. Richards in response to a healthcare request indicating he wanted to discuss his bowel issues, specifically frequent and loose stools. *Id.*; ECF 120 at 33. They discussed his medical history and prior surgeries, and Mr. Richards requested a refill of Nifedipine cream to help with rectal irritation. *Id.* Nifedipine cream was a non-formulary medication at the time, but Nurse Thews submitted a formulary exception request to the Regional Medical Director so Mr. Richards could continue receiving the medication. ECF 112-3 at 2.

On May 8, 2020, Dr. Marthakis ordered Mr. Richards should no longer receive Pepcid for his GERD and should instead receive Bismuth chewable tablets. *Id.* On June 22, 2020, Nurse Thews saw Mr. Richards in response to a healthcare request regarding his GERD. *Id.*; ECF 120 at 34-35. Nurse Thews assessed Mr. Richards, discussed his symptoms, and took his vital signs. ECF 112-3 at 2-3. Based on the results of her examination and the orders of Dr. Marthakis, Nurse Thews did not believe Mr. Richards needed any additional medication and instead instructed him to continue taking his chewable tablets and to follow healthy habits to control his GERD, such as avoiding spicy food, losing weight, increasing fluid intake, and exercising. *Id.* at 3. A few weeks later, Nurse Thews was contacted by another nurse after Mr. Richards had requested Pepcid or Prilosec. *Id.* At that time, Nurse Thews did not believe he required either of those medications and indicated they would follow up with him at a future date after reviewing recommendations from his previous providers. *Id.*

Between August 2020 and May 2021, Nurse Thews saw Mr. Richards several times regarding his diabetes but Mr. Richards did not appear for a number of chronic care visits. *Id.* at 4; ECF 120 at 37-40. On May 3, 2021, Nurse Thews saw Mr. Richards for a chronic care visit. ECF 112-3 at 4; ECF 120 at 40. Nurse Thews continued a number of Mr. Richards' medications and submitted a formulary exception request to continue him on a probiotic. ECF 112-3 at 4. Mr. Richards requested Prilosec or Loperamide for his heartburn, but Nurse Thews discussed it with Dr. Marthakis and determined he should receive Tums and Pepto Bismol. *Id.* at 4-5. Nurse Thews noted Loperamide had previously been ineffective for Mr. Richards. *Id.* at 5. Nurse Thews also ordered blood tests and a stool culture. *Id.* Mr. Richards had active prescriptions for Crestor, a probiotic, Dilantin, fiber tablets, Glimepiride, Lisinopril, Metformin, Tums, and a Xopenex inhaler. *Id.*

Nurse Thews argues summary judgment is warranted in her favor because she saw Mr. Richards on a number of occasions and always assured he had a treatment plan for his bowel issues and GERD. ECF 112 at 21-22. Mr. Richards responds Nurse Thews was deliberately indifferent because she refused to discuss his GERD and pain complaints on some occasions and provided him Tums and Pepto Bismol instead of Pepcid and Prilosec. ECF 120 at 36-42.

Here, it is undisputed Nurse Thews consistently examined Mr. Richards and provided him treatment for his GERD and bowel issues, including Tums, Pepto Bismol, Nifedipine cream, Bismuth chewable tablets, a probiotic, fiber tablets, and instructing him on healthy habits to control his symptoms. Thus, to survive summary judgment, Mr.

11

Richards must provide evidence the treatment provided by Nurse Thews was "so plainly inappropriate as to permit the inference that [she] intentionally or recklessly disregarded his needs." *See Hayes*, 546 F.3d at 524. Mr. Richards raises several arguments in this regard.

First, Mr. Richards argues Nurse Thews was deliberately indifferent for providing him Tums and Pepto Bismol instead of Pepcid and Prilosec. ECF 120 at 36. However, this amounts to a demand for specific care. Moreover, Nurse Thews attests she considered Mr. Richards' requests for Pepcid or Prilosec and did not believe he required these medications based on her evaluation of his symptoms and her conversations with Dr. Marthakis. Second, Mr. Richards argues Nurse Thews was deliberately indifferent for continuing to pursue a treatment plan that "was not working." ECF 120 at 36. But Mr. Richards provides no facts or evidence explaining in what way the treatment was not working. ECF 120 at 36. Last, Mr. Richards argues Nurse Thews was deliberately indifferent because she did not always respond to his complaints of pain. *Id.* at 37-41. But, even assuming Nurse Thews did not always respond to Mr. Richards' complaints of pain, it is undisputed he received pain medication throughout his treatment. Because Mr. Richards was receiving treatment for his pain at all relevant times, he does not explain how Nurse Thews' failure to respond to his complaints of pain violated his Eighth Amendment rights.

Thus, there is no evidence by which a reasonable jury could conclude the treatment Nurse Thews provided Mr. Richards for his GERD and bowel issues was "plainly inappropriate." Summary judgment is warranted in favor of Nurse Thews.

C. *Nurse Fritter*

Mr. Richards is proceeding against Nurse Fritter "for failing to provide adequate medical care for his pain and digestive issues from January 2020 to the present[.]" ECF 65 at 5. However, Mr. Richards testified at his deposition he had no basis to sue Nurse Fritter and he planned to dismiss her from this case. ECF 112-4 at 5-6. Moreover, Mr. Richards does not mention Nurse Fritter in his response to the summary judgment motion or identify any basis for suing her. Thus, there is no evidence by which a reasonable jury could conclude Nurse Fritter violated Mr. Richards' Eighth Amendment rights. Summary judgment is warranted in her favor.

D. *Wexford of Indiana*

Mr. Richards is proceeding against Wexford on a *Monell* claim "for maintaining a policy of discouraging medical providers from providing effective pain medication for inmates' chronic pain, and instead encouraging providers to simply refer inmates to the commissary to purchase over-the-counter medications[.]" ECF 65 at 5. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Specifically, Mr. Richards argues Dr. Marthakis provided him ineffective medications pursuant to Wexford's policy of encouraging providers to order cheaper but less effective medications. ECF 120 at 22-23.

A private company performing a state function, such as Wexford, can be held liable to the same extent as a municipal entity under *Monell*. *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). Under *Monell*, a municipality may only be held liable for constitutional violations caused by the municipality through its own policy, practice,

13

or custom. *Monell*, 436 U.S. at 694. To recover under *Monell*, a plaintiff must establish that: (1) he suffered a deprivation of a federal right (2) as a result of an express municipal policy, a widespread custom, or a deliberate act of a decisionmaker with final policymaking authority for the municipality that (3) was the proximate cause of his injury. *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). Thus, "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield Ill.*, 630 F.3d 499, 504 (7th Cir. 2010).

Here, there is no evidence by which a reasonable jury could determine that (1) Wexford has a policy of discouraging medical providers from providing effective pain medication for inmates' chronic pain and encouraging providers to refer inmates to the commissary to purchase over-the-counter medications, or (2) Mr. Richards suffered a deprivation of a federal right as a result of that policy. *See King*, 763 F.3d at 649; *Sallenger*, 630 F.3d at 504. Specifically, it is undisputed Dr. Marthakis prescribed Mr. Richards Depakote for chronic pain management, which is a prescription drug not available over the counter. There is no evidence Mr. Richards was ever prevented from receiving Depakote. Thus, because Mr. Richards provides no evidence Wexford's employees denied him effective pain medication in favor of over-the-counter medications, no reasonable jury could conclude Wexford's policies caused Mr. Richards a constitutional injury. *See id.* Summary judgment is warranted in favor of Wexford on this claim.

E.  *Warden Neal*

Mr. Richards is proceeding against Warden Neal "to obtain permanent injunctive relief related to his need for constitutionally adequate medical care to address his pain

and digestive issues[.]" ECF 65 at 5. Here, this court already concluded that Mr. Richards' claim against Warden Neal would necessarily fail if he did not establish a substantive Eighth Amendment claim against the Medical Defendants. *See* ECF 119. Thus, because the record shows the medical defendants have provided Mr. Richards constitutionally adequate medical care for his pain and digestive issues, Mr. Richards has not shown he is entitled to injunctive relief against Warden Neal. Summary judgment must be granted in favor of Warden Neal on this claim.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 111); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Danny R. Richards and to close this case.

SO ORDERED.

May 31, 2022

*s/ Damon R. Leichty*
Judge, United States District Court